# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AUDREY NEWSOME | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:04CV265 |
| | § | (Judge Schell/Judge Bush) |
| COLLIN COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, ET AL. | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Collin County Community College District's ("CCCCD") Motion for Summary Judgment. Having considered the motion, Plaintiff's response, and Defendant's Reply, the Court is of the opinion that Defendant's Motion for Summary Judgment should be granted, in part and denied, in part.

Plaintiff began working for CCCCD in November of 1988 as a Counselor/ Advisor for Project SPARK. Plaintiff claims that in 1998 she began being sexually harassed by Roosevelt Johnson, the non-employee husband of her supervisor, Dr. Norma Johnson.[1] The harassment generally consisted of uninvited visits and telephone calls made to Newsome. On one occasion, Dr. Johnson delivered a sealed envelope to Newsome from Roosevelt Johnson, and upon opening the envelope, Newsome discovered it to contain "inappropriate documentation concerning male/female relationships." (Pl.'s 3d Am. Cmpt. ¶ 29). The next day, Roosevelt Johnson came to Ms. Newsome's desk and gave her a list of phone numbers at which he could be reached, telling her that they "needed some private time" and instructing her not to tell Dr. Johnson. (Pl.'s 3d Am. Cmpt.

---

[1] Dr. Norma Johnson was originally named as a Defendant to this action but has since been dismissed.

¶¶ 32-33) On another occasion, Roosevelt Johnson made an inappropriate phone call to Newsome in which he spoke of female genitalia.

Plaintiff first reported Mr. Johnson's sexual advances to a CCCCD employee on February 8, 2000, when, during a meeting, she informed Dr. Mary McRae, Vice President of Student Development, of Mr. Johnson's conduct. Dr. McRae instructed Plaintiff not to worry about the situation and said that Dr. Johnson would not be surprised to hear about it. Mr. Johnson's harassing conduct ended after the February 8, 2000 meeting.

Plaintiff claims that, as a result of the harassment, her relationship with Dr. Johnson began to suffer and that Dr. Johnson began to harass Plaintiff in retaliation beginning in April of 1999. Plaintiff further claims that she was passed over for a supervisory position in the ACCESS office. Newsome next claims that Dr. Johnson and Dr. McRae deprived her of a 5% pay increase in retaliation for her reporting Roosevelt Johnson's harassment. In 2000, when Newsome was late returning from a work-related conference in Florida, she claims Dr. Johnson had her written up for her tardiness. She was thus passed over for a night administrator position and not paid for the partial workday due to her late arrival. At no time, Newsome claims, did CCCCD or its employees investigate her allegations of sexual harassment or take corrective action. While Plaintiff acknowledges that Roosevelt Johnson stopped sexually harassing her after February 8, 2000, Plaintiff claims that she was continuously retaliated against until her ultimate termination on April 13, 2004.

Plaintiff further claims that Dr. McRae, Juanita Austin, and Dr. Johnson met and conspired to wrongfully terminate Plaintiff for reporting sexual harassment, repeatedly requesting that the incident and related retaliation be investigated and corrected, and reporting the theft of a long

distance access code to the Dean of Students. She claims the conspiring of the above mentioned parties was not within the parties' employment duties. Furthermore, Plaintiff alleges that Dr. Johnson sabotaged at least three major projects on which she was working, ultimately leading to Newsome's termination on April 13, 2004.

In 2003, Plaintiff filed a formal grievance in which she attempted to include her sexual harassment allegations. However, she claims that CCCCD's Human resources Manager, Barbara Haroutunian, and Helen DuPont, who were assisting Dr. Johnson in preparing a response, insisted that she remove the sexual harassment allegation. According to Plaintiff, the allegations of sexual harassment were never investigated and CCCCD failed to follow its own multi-step policy for positive disciplinary procedure for performance evaluations as related to Dr. Newsome.

A hearing was held in April 2003 regarding Plaintiff's grievance at which Plaintiff was able to present evidence and testify. After Dr. Sheryl Kappus, the hearing officer, issued an unfavorable decision, Plaintiff appealed the decision to Dr. Cary Israel, who held a hearing in June of 2003. Plaintiff did not appeal Dr. Israel's decision.

According to Defendant, Plaintiff began having communication problems with Dr. Johnson in 2000. These issues were discussed with Plaintiff and documented on numerous occasions. Defendant claims that she was repeatedly warned that continued communication problems would lead to discipline and even termination.

In April 2004, when a student employee under Dr. Newsome and Dr. Johnson's supervision was caught illegally using the department's long-distance access code, Plaintiff called the Dean without first discussing the matter with Dr. Johnson. When Dr. Johnson found out about Plaintiff's failure to tell her about the theft, a personnel meeting was held on February 14, 2004 to discuss the

issue. Plaintiff admitted that she failed to communicate with Dr. Johnson about the issue, and stated, "You know, I have no feeling of wanting to communicate with this person [Dr. Johnson]. And I don't say that lightly..." (Trans. of Personnel Meeting with Newsome, at pgs. 40-41). Defendant claims that Plaintiff's supervisors and Human Resources both recommended that, due to her communication problems, Plaintiff be terminated effective April 13, 2004.

Plaintiff has dismissed all Defendants other than CCCCD, and a number of Plaintiff's claims have been dismissed by Plaintiff or by order of this Court. Plaintiff's remaining claims against CCCCD are: (1) Sexual Harassment; (2) Violation of the Texas Whistleblower Act; (3) Retaliatory Discharge; (4) Due Process Violation; and (5) Retaliation.

## **Standard**

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party satisfies its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party

will bear the burden of proof, then summary judgment will be appropriate. *Celotex*, 477 U.S. at 323. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(citations omitted).

### Sexual Harassment

Plaintiff first claims she was sexually harassed in the workplace by non-employee Roosevelt Johnson. She alleges that CCCCD violated its duty to protect its employees from sexual harassment and unwelcome sexual advances. She further alleges that CCCCD failed to take prompt remedial action or investigate her claims of sexual harassment.

Defendant first claims that Plaintiff's sexual harassment claim fails because the conduct complained of does not rise to the level of sexual harassment. Defendant cites 29 C.F.R. 1604.11 for the proposition that Sexual Harassment is "unwelcome verbal or physical conduct of a sexual nature that is explicitly or implicitly a condition of employment." (Def. Mot. Summ. J., at pg. 7). Not only does Defendant misquote the regulation, but Defendant's quote is also incomplete. 29 C.F.R. 1604.11 states:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

The Fifth Circuit has stated that, in order to prove sexual harassment based on a hostile work

environment, a Plaintiff must establish that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). The alleged conduct must create an environment which a reasonable person would find to be hostile or abusive. *Id.* When determining whether an environment is objectively hostile or abusive, Courts consider the frequency of the conduct, its severity, whether it is physically threatening, and the degree to which it interferes with an employee's work performance. *Id.*

The Court finds that Plaintiff has plead sufficient facts to establish that Roosevelt Johnson's offensive conduct and sexual advances constituted sexual harassment. Although Roosevelt Johnson had no direct control over the terms or conditions of Plaintiff's employment, his remarks and conduct were such as a reasonable person would find hostile or offensive. The Court further finds that Plaintiff has made a sufficient showing that Mr. Johnson's remarks and actions interfered with her work performance.

Defendant next claims that Plaintiff's sexual harassment claim must fail because the harassment stopped immediately after Plaintiff reported it. "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Nash v. Electroscope Svs., Inc.*, 9 F.3d 401, 402 (5th Cir. 1993). While what constitutes proper remedial action is determined on a case-by-case basis, such action must at least be sufficient to put an end to the harassment. *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 329 (5th Cir. 2004). The Fifth Circuit has held that an action is reasonably calculated to end sexual harassment when, after the harassment is reported and the remedial action

is promptly taken, the harassment actually ends. *See Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451 (5th Cir. 1994).

The evidence presented shows that, although Plaintiff believed that Dr. Johnson was aware of the harassment when it was occurring, she never reported the harassment to anyone at CCCCD until February 8, 2000. At that point, Dr. McRae informed Dr. Johnson of her husband's behavior. Though no further remedial action was taken, it is evident that no further remedial action was necessary, as the harassment ended on that date. In fact, Plaintiff never again talked with Mr. Johnson after that date. While the remedial action taken by CCCCD would likely seem insufficient if Mr. Johnson were a CCCCD employee, considering the circumstances, the fact that CCCCD had no control over Mr. Johnson, and the ultimate result, the Court finds that CCCCD took appropriate remedial action upon learning of Plaintiff's sexual harassment complaints. Plaintiff's sexual harassment claim thus fails as a matter of law.

Defendant next asserts that Plaintiff's claim of sexual harassment must fail because Roosevelt Johnson was not under Defendant's control. While the Fifth Circuit has held that "Title VII nowhere confers an obligation on employers to see to it that their employees are free of sexual harassment by non-employees *outside the workplace*," it has acknowledged that "such a duty may obtain as to actions of non-employees *in* the workplace." *Whitaker v. Carney,* 778 F.2d 216, 221 (5th Cir. 1985); *see also* 29 C.F.R. § 1604.11(e). An employer can be held liable under Title VII for harassing conduct when the employer ratifies or acquiesces in the conduct by not taking immediate corrective action when it knew or should have known of the conduct. *Little v. Windermere Relocation, Inc.*, 301 F.3d. 958, 968 (9th Cir. 2002) (finding an employer could be liable for sexual harassment when an employee was raped by a client); *see also Turnbull v. Topeka State Hosp.*, 255

F.3d 1238 (10th Cir. 2001) (holding employer's responsibility for sexual harassment by non-employee depended largely on employer's response). 29 C.F.R. § 1604.11(e) states that an employer may be liable for the acts of non-employees in the workplace if the employer knew or should have known of the non-employee's conduct and failed to take immediate corrective action.

The Court finds that Plaintiff has not made a sufficient factual showing that CCCCD knew or should have known of Mr. Johnson's conduct. While Plaintiff asserts that Dr. Johnson saw Mr. Johnson talking to Plaintiff, she has made no showing that Dr. Johnson or any other CCCCD employee or agent knew or had reason to know of the content of such discussions prior to February 8, 2000, after which point the conduct stopped. But for Plaintiff's failure to prove such knowledge, the Court would find a fact issue on these grounds since the conduct took place on CCCCD property. However, such a finding would be of little consequence since the Court believes Plaintiff's sexual harassment claim should be dismissed on other grounds.

Defendant finally argues that Plaintiff's sexual harassment claim is time-barred. The Court agrees. All parties agree that Mr. Johnson last harassed Plaintiff prior to February 8, 2000. However, Plaintiff did not file her EEOC charge alleging sexual harassment until April 22, 2004, more than 300 days after the last act of alleged sexual harassment occurred. *See* 42 U.S.C. § 2000-5(e)(1).

Plaintiff claims, without citing any legal authority, that her sexual harassment claim is not time-barred because it relates to a pattern of continuous harassment that has been allowed to permeate at CCCCD. Nonetheless, she alleges no acts of sexual harassment after February 8, 2000. Her only allegation after that date is that CCCCD failed to properly investigate her claims. While Courts will, in certain exceptional cases, utilize the theory of a "continuing violation" to allow

Plaintiffs to sue for acts that occurred outside of the limitations period, the equitable exception only applies when the violation manifests itself over time rather than as a series of discrete acts. *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 537 (5th Cir. 1998). The core theory of the exception is that equitable consideration may require that the filing period not begin to run until a reasonable person would have sufficient facts to support a Title VII claim. *Id.* The focus is on what event, out of fairness, should have alerted the plaintiff that she had a claim. *Id.*

The Court finds that Plaintiff's claim of sexual harassment is distinct and separate from her allegations of a continuous pattern of events creating a hostile work environment. She should have been aware of her sexual harassment claims the very first time Mr. Johnson made a sexual comment to her, and the four year gap between the last act of sexual harassment and the filing of Plaintiff's EEOC charge is inexcusable. The Court thus finds that Plaintiff's sexual harassment claim is time-barred and thus fails as a matter of law.

## Texas Whistleblower Act

Plaintiff alleges that Defendant violated the Texas Whistleblower Act, Tex. Gov. Code § 554.001, *et seq.,* by retaliating against her for reporting sexual harassment and by retaliating against her for reporting the theft of a long distance access code to the Dean of Students. In order to prevail on a claim under the Texas Whistleblower Act, Plaintiff must show that: (1) she was a public employee; (2) she acted in good faith in making the report; (3) the report involved a violation of law by the agency or a public employee; (4) the report was made to an appropriate law enforcement authority; and (5) she was retaliated against for making the report. *Duvall v. Tex. Dept. of Human Servs.*, 82 S.W.3d 474, 478 (Tex. App.–Austin 2002, no pet.). The Supreme Court of Texas has held that an employee's belief that she was reporting a violation of law to an appropriate law enforcement

authority must pass both subjective and objective tests. *Tex. Dept. of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002). It must be established that:

> (1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and
> (2) the employee's belief was reasonable in light of the employee's training and experience.

*Id.* The Texas Supreme Court has also noted that "the statutory definition's limiting language–regulate under, enforce, investigate, and prosecute–does not include an employer's power to internally discipline its own employees for an alleged violation." *Id.* (there was no evidence that employee had good faith belief that employer was appropriate law enforcement authority when only powers of employer were internal disciplinary process and power to forward information to another entity for prosecution); *see also City of Weatherford v. Catron*, 83 S.W.3d 261, 268-69 (Tex. App.–Ft. Worth 2002, no pet.) (city, as a matter of law, was not appropriate law enforcement authority to which employee should have reported violation of sexual harassment laws); *Duval*, 82 S.W.2d at 481-82 (fact that employee believed supervisor could take remedial action did not satisfy subjective or objective tests under Texas Whistleblower Act); *City of Houston v. Kallina*, 97 S.W.3d 170, 173-74 (Tex. App.–Houston [14th Dist.] 2002, pet. denied) (employee who reported theft to City's asset management department did not meet objective or subjective requirements in that he had no reason to believe that department could enforce penal laws).

Plaintiff reported her sexual harassment claims to Dr. McRae and to the Human Resources Department. Plaintiff, as an educated woman, could not have possibly believed that Dr. McRae or the Human Resources department had the authority to investigate or prosecute violations of the law. Texas Courts have made it clear that a Plaintiff's belief that her employer could take internal

remedial action is not sufficient for reporting purposes under the Texas Whistleblower Act. *See Duval*, 82 S.W.2d at 481-82.

The evidence is not clear that Plaintiff called the Dean of Students to actually report the phone card theft, as she was apparently already aware that the Dean of Students knew about the theft. Even if she did call to report the theft, however, the Court finds, based on Texas law, that Plaintiff could not have believed that the Dean of Students was an appropriate authority to enforce the penal laws. Furthermore, regarding both of Plaintiff's claims, she could not have reasonably believed that CCCCD was an appropriate law enforcement authority.

Finally, Plaintiff has produced no evidence linking her reporting of the phone card theft to her termination. She has provided the Court with no plausible reason as to why CCCCD or any of her superiors would retaliate against her for reporting the theft of a phone card by a student/employee. Rather, Plaintiff seems to have taken a shotgun approach in this lawsuit, alleging every claim possible, no matter how implausible the allegations. For the reasons stated above, Plaintiff's claims under the Texas Whistleblower Act fail as a matter of law.

### Retaliation/ Retaliatory Discharge

Plaintiff further claims that CCCCD is liable for retaliation and retaliatory discharge. The Court has previously limited Plaintiff's retaliation/retaliatory discharge claims to allegations of retaliation related to Plaintiff's reporting of sexual harassment. In her Third Amended Complaint, Plaintiff lists twenty-two separate actions taken by CCCCD which she believe create a continuos pattern of retaliation leading up to her ultimate termination.

To make out a *prima facie* case of retaliation, a Plaintiff must show: (1) that she is in a

protected class; (2) she suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). Defendant first agues that Plaintiff does not meet the first prong because she never filed an official complaint alleging sexual harassment. Though Plaintiff would have been better served to file a formal written complaint, the Court finds that Plaintiff's February 8, 2000 complaint to Dr. McRae that she was being sexually harassed is protected conduct.

Defendant next argues that a number of the retaliatory acts cited by Plaintiff do not rise to the level of adverse employment actions. Under Fifth Circuit law, only "ultimate employment decisions" such as hiring, firing, granting leave, promoting, and compensating are considered adverse employment actions. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997). "An employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (citations omitted). Employment actions will generally not be considered adverse when pay, benefits, and level of responsibility remain the same. *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971, 981 (E.D. Tex. 2004). Documented reprimands and negative performance evaluations, even if undeserved, do not, by themselves constitute adverse employment actions. *Id.* at 981-82. Other actions which do not rise to the level of ultimate employment decisions include: restructuring office procedures, ostracism by coworkers, loss of some job duties, assignment to a less desirable shift, change of work schedule, request that employee perform new tasks, rude treatment by employer, and low evaluation that could lead to missed pay increases. *See Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (*citing Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 658 (5th Cir. 2002); *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 521 (5th

Cir. 2000); *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389 n.2 (5th Cir. 2000); *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000); *Watts v. Kroger Co.*, 170 F.3d 505, 511-12 (5th Cir. 1999); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex.*, 139 F.3d 532, 540 (5th Cir. 1998); *Mattern*, 104 F.3d at 708. Although Plaintiff cites some non-binding authority to support her assertions that virtually all of the retaliatory acts complained of amounted to ultimate employment decisions, the Court finds that, aside from Plaintiff's termination, the only acts complained of which could be considered ultimate employment decisions are: (1) the denial of promotion to evening administrator in November of 2000; (2) the denial of promotion to supervisor of the ACCESS office in April of 1999; (3) the denial of 5 hours of compensation on October 9, 2000; (4) and the loss of a 5 percent pay increase in February of 2000.

With what remains, the Court must now decide if Plaintiff has met the third prong of her *prima facie* case, which is to establish a causal nexus between the protected activity and the adverse employment action alleged. To establish a causal nexus, Plaintiff must prove that "but for the protected activity, the adverse employment action would not have occurred. *Green*, 284 F.3d at 657. The Court finds that, based upon the evidence submitted and the timing of the adverse employment actions, there is a fact issue as to whether a causal nexus exists between Plaintiff's complaint of harassment, the denial of 5 hours compensation, the 5 percent pay decrease, the denial of promotion to the evening administrator position, and her ultimate termination. The denial of promotion to supervisor of the ACCESS office occurred nine months before Plaintiff even complained of sexual harassment, and Plaintiff has thus failed to establish a causal nexus as to that action. While the Court is somewhat reluctant to find a causal link between Plaintiff's complaint of harassment in February of 2000 and her termination more than four years later, due to the somewhat continuous

string of events, the Court finds a fact issue.

Once Plaintiff has plead a *prima facie* case of retaliation, the burden shifts to Defendant to state a legitimate, non-retaliatory reason for its actions. *Septimus*, 399 F.3d at 610. If Defendant does so, the presumption of retaliation drops and Plaintiff must prove that the stated reason for the adverse employment action is merely a pretext. *Id.* at 610-11. Defendant has produced evidence that: (1) Plaintiff was denied 5 hours of compensation because she returned late from a conference in Florida; (2) Plaintiff received a 5% pay decrease because her acting duties as Acting Assistant Director of Advising ended when the Assistant Director of Advising returned from leave; and (3) Plaintiff was ultimately terminated because of her failure and unwillingness to communicate with Dr. Johnson. Defendant has made no argument regarding the denied promotions.

Plaintiff argues that Defendant's proffered reasons for its adverse actions are pretextual because Defendant's reasons for terminating Plaintiff were not laid out in detail, because Plaintiff did, in fact, communicate with Dr. Johnson about the stolen phone card, because Defendant violated its own due process, and because Defendant treated Plaintiff differently from other employees. While the Court does not find Plaintiff's case to be a strong one, Plaintiff has plead sufficient facts to create a fact issue as to pretext. Though defendant has given legitimate reasons for each of its adverse actions, the timing of the actions in relation to Plaintiff's complaint, the fact that there were no major issues with Plaintiff prior to the complaint, and the assertion that Defendant treated Plaintiff somewhat differently from other employees, creates a fact issue, however slight, sufficient to keep Plaintiff's retaliation/ retaliatory discharge claims alive.

Finally, Defendant argues that Plaintiff's retaliation claims are time-barred. The Court agrees. Although Plaintiff alleges a continuing series of retaliatory events, the Court notes that the

"continuing violation doctrine" cannot operate to save claims outside of the statute of limitations when it is "clear that a one-time employment event, including the failure to hire, promote, or train and dismissal or demotions, is 'the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.'" *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001) (quoting *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998). The Court finds that each of the actions alleged by Plaintiff were of such a nature that Plaintiff should have been put on notice that a cause of action had accrued. With the exception of Plaintiff's termination, each of the adverse actions occurred outside of the 300 day limitations period. Thus, the Court finds that the Plaintiff's retaliation claims fail as a matter of law. There is, however, a fact issue as to Plaintiff's claim for retaliatory discharge.

### **Due Process Violation**

Plaintiff's Due Process claim also fails as a matter of law. Plaintiff claims that her due process rights were violated because she was not allowed to offer witnesses or additional supporting documents at her grievance hearing. Furthermore, Plaintiff claims that CCCCD failed to follow its own multi-step policy for positive discipline procedures.

Plaintiff is claiming a violation of her Procedural Due Process rights. In order to succeed under a claim for deprivation of Due Process, Plaintiff must prove that she was deprived of a liberty or property interest. *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 473 (5th Cir. 2003); *Wimer v. Holzapfel*, 868 F. Supp. 844, 848 (E.D. Tex. 1994). To determine whether a property interest exists, the Court must look to state rather than federal law. *Board of Regents v. Roth*, 408 U.S. 564, 577-78 (1972); *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003). Under Texas

law, the fact that Plaintiff had no employment contract for a specific duration rendered her an at-will employee. *McDonald v. City of Corinth*, 102 F.3d 152, 156 (5th Cir. 1996). A property interest does not exist where employment is not protected but is it at-will. *Muncy*, 335 F.3d at 397 n.1.

Plaintiff has failed to show or even allege that she had any property interest in her at-will employment. She was not a tenured employee and was not under an employment contract for a specific duration. While CCCCD applied certain procedures when terminating employees, Due Process did not require CCCCD to employ any procedures when terminating Plaintiff. Plaintiff's due process claim thus fails as a matter of law.

### **Punitive Damages**

Although Plaintiff has not responded to Defendant's claim that it cannot be liable for punitive damages, the Court is unpersuaded by Defendant's argument. Rather, the Court finds that an employer can be held liable for punitive damages in a Title VII case if (1) its agent is in a position of managerial capacity, (2) the agent acts within the scope of employment, and (3) the agent acts with malice or reckless indifference towards the federally protected rights of the plaintiff. *Green*, 284, F.3d 642, 653 (5th Cir. 2002). Thus, the Court finds that Plaintiff may seek punitive damages. While the Court notes that pursuant to 42 U.S.C. § 1981a(b)(1), a Plaintiff may not recover punitive damages from a government, government agency, or political subdivision, Defendant has neither clearly argued nor sufficiently shown that it is a political subdivision of the State of Texas. At this point, therefore, Plaintiff's claim for punitive damages survives. If, at trial, Defendant produces evidence that it is, in fact, a political subdivision, Plaintiff's claim for punitive damages will fail as a matter of law.

## **RECOMMENDATION**

Based upon the foregoing, the Court recommends that Defendant's Motion for Summary Judgment should be GRANTED as to Plaintiff's claims for Sexual Harassment, Violation of the Texas Whistlebower Act, Retaliation, and Due Process Violation, and that such claims should be DISMISSED WITH PREJUDICE. The Court further recommends that Defendant's Motion for Summary Judgment should and DENIED as to Plaintiff's claims for Retaliatory Discharge and Punitive Damages.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 18th day of July, 2005.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE